Wilton E. HALL, Greenville Television Company, Appellants,

v.

FEDERAL COMMUNICATIONS COMMISSION, Appellee,
The Spartan Radiocasting Company,
Intervenor,
The City of Spartanburg, South Carolina,
Intervenor.

Wilton E. HALL, Greenville Television Company, Appellants,

v.

FEDERAL COMMUNICATIONS COMMISSION, Appellee,
The Spartan Radiocasting Company,
Intervenor.

Nos. 13231, 14018, 14087.

United States Court of Appeals
District of Columbia Circuit.

Argued April 7, 1958.

Decided May 22, 1958.

Mr. Benedict P. Cottone, Washington, D. C., with whom Messrs. Arthur Scheiner and Ben C. Fisher, Washington, D. C., were on the brief, for appellants.

Mr. Richard A. Solomon, Asst. Gen. Counsel, Federal Communications Commission, Washington, D. C., with whom Messrs. Warren E. Baker, Gen. Counsel, Federal Communications Commission, and Richard M. Zwolinski, Counsel, Federal Communications Commission, Washington, D. C., were on the brief, for appellee.

Mr. William J. Dempsey, Washington, D. C., with whom Messrs. William C.

Koplovitz and Harry J. Ockershausen, Washington, D. C., were on the brief, for intervenor The Spartan Radiocasting Co.

Before EDGERTON, Chief Judge, and BAZELON and FAHY, Circuit Judges.

BAZELON, Circuit Judge.

This appeal brings to us for the third time the controversy concerning the Federal Communications Commission's grant to Spartan Radiocasting Company of a modification of its television construction permit. On September 6, 1956, we set aside a Commission order affirming that grant.[1] On the basis of the Commission's findings, we held that (1) the modification resulted in "a curtailment of service to the Spartanburg area which, unless outweighed by other factors, is not in the public interest," 99 U.S.App.D.C. at page 96, 237 F.2d at page 577; and (2) Spartan "misrepresented material facts concerning its proposal," which "mispresentation was calculated, deliberate and not insignificant." Ibid. We added:

"But we have no way of determining from the record whether service curtailment may be outweighed by other factors pointing toward, rather than away from, public interest.[2] As we have said, such a question is for the Commission's consideration, as is also the question whether intervenor's misrepresentation so far deprives it of reliability as to disqualify it as a licensee. For consideration of those questions, the case is remanded to the Commission." 99 U.S.App.D.C. at pages 96–97, 237 F. 2d at pages 577–578.

On July 18, 1957, the Commission, after reconsideration of the case on remand, reaffirmed its grant of the modifi-

1. Hall v. Federal Communications Commission, 1956, 99 U.S.App.D.C. 86, 237 F.2d 567. For our earlier decision, see Greenville Television Co. v. Federal Communications Commission, 1955, 95 U.S.App.D.C. 314, 221 F.2d 870.

2. We pointed out, for example, that, if the Commission had recognized the service curtailment, "it could then have con-

sidered whether the value to the community of a network affiliation outweighed the curtailment of coverage, whether a network other than CBS might be available without a change, and whether a CBS affiliation necessitated lowering both power and antenna height, as well as relocating the transmitter." 99 U.S.App.D.C. at page 91, 237 F.2d at page 572.

cation permit. From that action the present appeal is taken.

### The Service Curtailment Question

■ The first factor found by the Commission to outweigh the curtailment of service resulting from the modification was that the availability of a network affiliation at the new location assured the community that Spartan would actually commence operation. The Commission referred to the following observation it had made two years earlier in another proceeding:

> "At this stage in the development of the television industry, network programming is essential to the profitable operation of most stations; and, *in many instances*, its availability *may be* determinative of a station's ability to survive and furnish a needed television service to the public. The obtaining of network programs is such a vital and valuable asset to stations that we believe maximum opportunity should be given to all stations to compete for network programming." * * [Report and Order released June 24, 1955, In the Matter of Amendment of Sections 3.685(b) of the Commission's Rules and Regulations, 12 Pike & Fischer Radio Reg. 1537 (emphasis supplied).]

That network availability *may* determine *in many instances* whether a station will survive does not, of course, mean that it determines whether a particular station will commence operation. The Commission's general observation about the industry is, therefore, insufficient basis, standing alone, for a finding that Spartan's commencement of operations depended upon changing its transmitter site. And the observation does

stand alone, for, as the Commission stated, "The record herein is silent as to whether Spartan would have commenced operation without a network affiliation."

■ The second countervailing factor the Commission found was that, as a result of the modification, many persons in the coverage area would receive CBS network programs for the first time and other, already receiving CBS programs from other stations, would receive them on a stronger signal. The Commission has heretofore held that network programming is not so significant a factor as to warrant a preference in a comparative proceeding in favor of an applicant proposing to carry it as against one who proposes only locally originating programs.[3] Yet, if it now holds here that the value of network programming is such as to justify curtailing a station's coverage, that is a conclusion within its competence.

■ But, even if availability of a network affiliation outweighs curtailment of coverage, whether this modification was in the public interest depends additionally, as we said on the last appeal, upon "whether a network other than CBS might be available without a change, and whether a CBS affiliation necessitated lowering both power and antenna height, as well as relocating the transmitter." [4] By making no findings as to these additional matters, the Commission has ignored them.[5]

Perhaps the record would support a finding that no network affiliation would be available to Spartan at the original transmitter site. It may be, also, that a finding could be made that other network services would have less value to the community than CBS because they would be more duplicative of existing services. But these are matters for findings by the

---

3. See, for example, Cherokee Broadcasting Co., 13 Pike & Fischer Radio Reg. 725 (1956). In some circumstances, the Commission has said, the non-network programming may be preferred. Hi-Line Broadcasting Co., 13 Pike & Fischer Radio Reg. 1017, 1042–44 (1957).

4. Supra note 2.

5. It appears that Spartan is now operating at an effective radiated power of 257 kw, rather than the 200 kw authorized in the modification. But this does not yet aproach the 316 kw authorized in the original construction permit. The antenna height, originally 2,000 feet and modified to 1,182 feet, remains at the latter figure.

Commission and the Commission has made no such findings.

### The Misrepresentation Question

■ We left it for the Commission to conclude on remand whether Spartan's "calculated, deliberate and not insignificant" misrepresentation "so far deprives it of reliability as to disqualify it as a licensee." The clear implication of our remand was that the Commission could properly conclude that a given misrepresentation, although "calculated, deliberate and not insignificant," was excusable. The Commission's conclusion, of course, was to be based on findings supported by available evidence.

■ The Commission concluded that Spartan's misrepresentation did "not so far deprive it of reliability as to disqualify it as a licensee." This conclusion was based on the Commission's determination that Spartan was not guilty of "willful deception." To say that a "calculated, deliberate" misrepresentation is not "willful" is a contradiction in terms. The Commission's determination that Spartan was not guilty of willful misrepresentation is, therefore, not a valid finding supporting the conclusion of reliability.

We do not hold now, as we did not on the last appeal, that Spartan is disqualified. But if its willful, calculated and deliberate misrepresentation is to be excused, some reason must appear. Since Spartan has for some time been the licensee of a standard broadcast station and an FM station, it may have a record of past reliability and candor to be considered by the Commission together with other circumstances.

### Conclusion

The service curtailment resulting from the modification of Spartan's permit still remains unjustified by countervailing factors. Spartan's misrepresentation still remains as an unexcused bar to qualification. The order appealed from, reaffirming the modification, must be set aside and the case once more remanded to the Commission for its determination of the justifiability of the service curtailment and the excusability of the misrepresentation. If the Commission deems it advisable to reopen the record to recieve new evidence, for example as to Spartan's past record as a licensee, it may do so. As to any new matters introduced in such reopened proceedings, it is assumed that all the parties to the case will be heard.

In No. 14018, appellant seeks an order requiring the Commission, in effect, to take Spartan off the air pending the final outcome of the proceedings on the modification permit. We dealt with that issue in our order of June 4, 1957, in No. 13231. We now adhere to the position we then took. In taking that position, we assumed that the Commission would "proceed as expeditiously as possible to carry out [our] mandate of September 6, 1956. * * *" In adhering to that position, we make a like assumption as to our present mandate.

The Commission's order dated July 18, 1957 (released July 22, 1957) is set aside and the case remanded to the Commission for further proceedings consistent with this opinion.

FAHY, Circuit Judge (dissenting).

I would affirm.

As to the misrepresentation, we decided when the case was here before, 99 U.S.App.D.C. 86, 237 F.2d 567, that, though calculated, deliberate, and not insignificant, the misrepresentation did not automatically result in disqualification. We left to the Commission on remand to decide whether or not it so far deprived Spartan of reliability as to disqualify it as a licensee. The Commission, on the remand, considered that the misrepresentation was not a willful deception since it had to do with the "indecision" of Spartan at the time it requested the temporary authorization at Hogback; that is, the Commission does not read into the misrepresentation "a deliberate desire to commit wrong." The Commission concludes,

"[W]hile Spartan's misrepresentation is not to be condoned the

nature of its misrepresentation and the facts surrounding it do not so far deprive it of reliability as to disqualify it as a licensee."

It is quite true that the characterization by the Commission of the misrepresentation as not willful is inconsistent with our previous characterization of it as calculated and deliberate; but notwithstanding this I do not think we should consider the Commission's decision on remand as intended to evade our decision but as a good faith conclusion that the misrepresentation was not such wrongful conduct as to disqualify Spartan.

Danaher, Circuit Judge, dissented.